Izaak D. Schwaiger, SBN 267888
**SCHWAIGER LAW FIRM**
130 Petaluma Avenue, Suite 1A
Sebastopol, CA  95472
Tel: (707) 595-4414
Fax: (707) 581-1983
izaak@izaakschwaiger.com

John Houston Scott, SBN 72578
**SCOTT LAW FIRM**
1388 Sutter Street, Suite 715
San Francisco, CA 94109
Tel: (415) 561-9601
Fax: (415) 561-9609
john@scottlawfirm.net

Attorneys for Plaintiffs ESTATE OF NINO BOSCO,
by and through sucessor in interest, FRAUKA KOZAR,
and FRAUKA KOZAR individually.

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF NINO BOSCO, by and through sucessor in interest, FRAUKA KOZAR, and FRAUKA KOZAR individually,<br><br>        Plaintiffs,<br>v.<br><br>COUNTY OF SONOMA, MARK ESSICK, MAZEN AWAD, CALIFORNIA FORENSIC MEDICAL GROUP (CFMG), DR. TAYLOR FITHIAN, and DOES 1-50, inclusive.<br><br>        Defendants. | Case No:<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. **Deliberate Indifference**<br>2. **Custom and Practice**<br>3. **Failure to Train**<br>4. **ADA**<br>5. **Wrongful Death**<br>6. **Negligence Per Se**<br>7. **Unruh Act**<br><br>*JURY TRIAL DEMANDED* |

Plaintiff FRAUKA KOZAR alleges violations of the Constitutional rights of decedent Nino Bosco (hereinafter "Nino" or "Bosco"), and of the Constitutional rights of Plaintiff with respect to her familial association with her son Nino, and complains of Defendants and alleges as follows:

### JURISDICTION AND VENUE

1.     This action arises under 42 U.S.C. § 1983, 42 U.S.C. § 1988, 42 U.S.C. § 12123, and other California statutory/common law identified herein. Jurisdiction is conferred by virtue of 42 U.S.C. §§ 1331 and 1343. The United States District Court also has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367 as these claims arise from the same series of events and occurrences as those claims arising under federal law.

2.     As the conduct alleged herein occurred in Sonoma County, State of California, venue of this action lies in the United States District Court for the Northern District of California by virtue of 28 USC § 1391(b).

### IDENTIFICATION OF DECEDENT

3.     Nino Bosco, a mentally ill man in need of acute psychiatric care, committed suicide while in the custody of the County of Sonoma, at the Sonoma County Main Adult Detention Facility (hereinafter MADF or "the jail") on July 17, 2019.

### PARTIES

4.     Defendant County of Sonoma is, and at all relevant times alleged herein was, a public entity situated in the County of Sonoma, State of California, and organized under the laws of the State of California. The County is, and at all relevant times alleged herein was, responsible for overseeing the jail, the Sonoma County Sheriff's Office, Sonoma County Correctional Deputies and other agents/employees/contracted entities of the County, employees/agents of contracted entities of the County including, without limitation, California Forensic Medical Group ("CFMG") and CFMG employees/agents including, but not limited to, CFMG doctors/nurses/other staff. The County is liable for the intentional, reckless, and negligent acts of all the aforementioned parties, personnel, and entities as described herein. The County is, and at

SCHWAIGER LAW FIRM
130 PETALUMA AVE. STE. 1A
SEBASTOPOL, CA 95472

all relevant times alleged herein was, responsible for providing medical/mental health care at the jail.

5.    Defendant MARK ESSICK is, and at all relevant times alleged herein was, Sheriff of Sonoma County. Defendant MAZEN AWAD is, and at all relevant times alleged herein was, the Sheriff's Detention Division Operations Captain, and was in charge of the jail. In committing the acts and omissions alleged herein, ESSICK and AWAD acted under color of law and within the course and scope of their employment for the County. ESSICK and AWAD are, and at all relevant times were, officials with final authority regarding policies, customs, and/or procedures at the jail, and with final authority regarding the hiring, training, screening, supervision, discipline, retention, counseling, and control of County correctional deputies and staff, entities at the jail contracted by the County, and employees/agents of contracted entities of the County at the jail, including, but not limited to, CFMG and CFMG employees/agents. Defendants ESSICK and AWAD are being sued in their individual capacities.

6.    Defendant CALIFORNIA FORENSIC MEDICAL GROUP is, and at all relevant times alleged herein was, a corporation organized and existing under the laws of the State of California. CFMG has, and at all relevant times alleged herein had, a contract with the County to provide mental health, medical, and psychiatric services for inmates at the jail. CFMG is, and at all relevant times alleged herein was, responsible for providing medical and mental health care at the jail. At all relevant times alleged herein, CFMG and its employees/agents were acting under color of state law.

7.    Defendant Dr. TAYLOR FITHIAN is, and at all relevant times alleged herein was, the President and Medical Director of CFMG. In committing the acts and omissions alleged herein, FITHIAN was acting under color of law as the head of the County's contracted medical/mental health care provider at the jail, and within the course and scope of his employment with CFMG. FITHIAN is, and all relevant times alleged herein was, an official with final authority regarding policies, customs, and/or procedures at the jail, and with final authority regarding the hiring, training, screening, supervision, retention, counseling, and control of CFMG

employees/agents, acting under color of law at the jail. Defendant FITHIAN is being sued in his individual and official capacities.

8.     Plaintiffs do not presently know the true names and capacities of defendants DOES 1 through 50, inclusive, and therefore sues them by these fictitious names. Plaintiffs are informed and believes that DOES 1 through 50, and each of them, were responsible in some manner for the acts or omissions alleged herein, and for the injuries and damages suffered by Plaintiffs as described in this complaint. Plaintiffs may amend this Complaint to add their true names and capacities when they have been ascertained. Any reference in this Complaint to any named entity defendant, and individually named defendant, the terms "defendant," "defendants," "Defendant," and/or "Defendants" also refers to Defendant Does 1 through 50.

9.     At all times mentioned in this Complaint, each of the defendants, including all defendants sued under fictitious names, was the agent and employee of each of the remaining defendants, and in doing the things alleged in the Complaint, was acting within the course and scope of this agency or employment.

10.     In doing the acts and/or omissions alleged herein, defendants and each of them acted under color of authority and/or under color of state law, and, in concert with each other. Plaintiff sues all parties named as defendants in this Complaint in their individual and/or official capacities as referenced elsewhere in the Complaint.

### IDENTIFICATION OF PLAINTIFF

11.     NINO BOSCO was unmarried at the time of his death. Plaintiff FRAUKA KOZAR was Nino's mother. KOZAR brings this action as successor-in-interest to BOSCO for violations of rights personal to BOSCO, and for violation of rights personal to her, arising from injury to and death of her son.

### FACTS LEADING TO IN-CUSTODY SUICIDE

12.     Nino Bosco was the son of Frauka Kozar. He was thirty years old at the time of his death. He was an accomplished musician, loving son and brother, and a valued member of his family and of the community in which he lived. He also suffered from mental illness, but with the

SCHWAIGER LAW FIRM
130 PETALUMA AVE. STE. 1A
SEBASTOPOL, CA 95472

help of his family, medication, and mental health services, he led a joyful and productive life. Nino was bipolar and suffered from schizophrenia. Like many people with bipolar disorder, Nino's manic episodes presented special challenges for his family, and his mother would call the local police department for assistance when she was unable to manage Nino by herself.

13.     In October of 2018, Frauka called the police to assist with her son's mania. Upon completing the call, an officer told her that the only way the police could continue to help was if she applied for a restraining order against Nino. Unable to manage the challenges of her son's disability without the help of others, and with nowhere else to turn for help, Frauka reluctantly agreed and applied for the order. With nowhere to go, Nino began living in his car on the streets and his condition began to deteriorate.

14.     On June 2, 2019, Frauka called the police to request a welfare check of her son who was parked in front of their home and having a manic episode. Frauka advised police dispatch that Nino had a toy BB gun in his possession. When officers arrived they found Nino with the BB gun. He told the responding officers that he consented to them shooting him and "taking him out." Nino was arrested for violating the restraining order. He was taken to the Sonoma County Main Adult Detention Facility (MADF) and charged by the Sonoma County District Attorney with a misdemeanor. Upon being booked at the jail, CFMG staff performed an initial mental health assessment and appraisal of Nino. His responses indicated that he had been previously hospitalized for psychiatric treatment, that he was presently undergoing outpatient psychiatric treatment, and that he was taking psychiatric medication. He further reported that he was having hallucinations, and that he had previously attempted suicide. Nino explained that he wanted the police to shoot him because he was "in hell." CFMG staff noted that Nino was acting strange, that he was tangential and suffering paranoid delusions, that he had past diagnoses of Bipolar Disorder and Schizophrenia, and that he was suffering a manic episode. Nino was housed in the mental health module of the jail with a note from CFMG staff that "Inmate does not appear to be an acute danger to himself at this time."

SCHWAIGER LAW FIRM
130 PETALUMA AVE. STE. 1A
SEBASTOPOL, CA 95472

COMPLAINT FOR DAMAGES

15.     At his arraignment on June 7, 2019, his court appointed attorney declared a doubt as to Nino's competency to stand trial, and the criminal proceedings against him were suspended. A doctor was appointed to perform a psychological evaluation. Nino remained in jail.

16.     On June 11, 2019, CFMG staff noted that Nino appeared to be talking to an unseen person in his cell, that he was "psychotic, manic, or both," and that he "potentially met the criteria for 5150."

17.     On June 12, 2019, CFMG staff noted that Nino had become very psychotic, that he was unable to hold a conversation, was completely nude, and that he failed to acknowledge medical staff. Notes indicate that Nino had begun flooding his cell with water, was uncooperative with staff, that he was pacing his cell for so long without a break that his feet were beginning to swell, and that he was not sleeping. Nino was asked questions about suicidal ideation, but did not respond. CFMG staff noted that he "did not seem to be [a] danger to self or others," and that they did "not believe an emergency antipsychotic injection is appropriate at this time." Notes were made that the program director was contacted about moving Nino to a higher level of care.

18.     On June 13, 2019, Nino was observed standing naked in front of his cell door for the entire shift. He was removed from his cell and transported to the Crisis Stabilization Unit in Santa Rosa where his condition was monitored and medication administered. When Nino stabilized later that day he was returned to the jail.

19.     On June 14, 2019, the doctor issued her report opining that Nino was not competent to be prosecuted. A second doctor was appointed to examine the issue of restorability to competency, and CMFG staff devised a mental health treatment plan. CFMG notes state that Nino's condition had at this point deteriorated to the point that was not able to care for himself, that he was urinating on the floors, "floridly psychotic," refusing medications, and exhibiting self-neglect. CFMG recommended transferring Nino to an outside crisis stabilization unit for a 5150/5250 hold. Nino was transferred to Marin General Hospital later that day where he received stabilization treatment. With his condition improved, Nino was discharged from Marin General

SCHWAIGER LAW FIRM
130 PETALUMA AVE. STE. 1A
SEBASTOPOL, CA 95472

on June 25, 2019, and was returned to the Sonoma County jail in a non-mental health housing module.

20.     On June 25, 2019, Nino reported to CFMG staff that following his stay at the hospital he was doing much better. He denied suicidal ideations and presented as calm, cooperative, and well-groomed with a bright affect. But after another week in the jail Nino's condition had begun to worsen. On July 2, 2019 he reported to CFMG staff that "I'm very anxious in this jail room. I want to get out. I really want out of here." Nino complained that he needed Seroquel for his anxiety, but understood that the jail did not have any.

21.     On July 8, 2019, CFMG mental health staff were called to Nino's cell to interview him. Nino reported the following: "I have been taken off my medications. I want back on my Seroquel. I need my Seroquel. You are messing with me. I want to go to CSU (Crisis Stabilization Unit) or Marin General. I went there before. My life is at risk here. I will be suicidal if I can't get my Seroquel. I don't belong in jail. This is all a mistake."

22.     On July 9, 2019, Nino complained that he was becoming suicidal because of his medication. Correctional staff noted he was "spiraling down" and CFMG staff recommended Nino be placed in a safety cell, noting that he was at risk for self-harm, and directing staff to notify medical if his symptoms worsened. A note was made that mental health staff should continually assess Nino for danger to self. CFMG notes clearly state that Nino had endorsed suicidal ideations and that he had verbalized a plan to kill himself. Later that day Nino reported that he was no longer feeling suicidal, and he was released from the safety cell.

23.     On July 10, 2019, CFMG notes state that Nino was exhibiting signs of increased anxiety, stating "I'm really stressed out! I haven't been able to talk to my public defender at all. I'm here because they don't understand the restraining order. My mom has a restraining order against me but it's a friendly contact order, so we can talk unless she tells me to leave and then I have to. My mother is my caretaker and my power of attorney. Everything! I need to be able to contact my mother! I'm not supposed to be stuck in this cell!" CFMG staff noted that "triggers are being in cell for long periods of time, lack of control."

COMPLAINT FOR DAMAGES

SCHWAIGER LAW FIRM
130 PETALUMA AVE. STE. 1A
SEBASTOPOL, CA 95472

24.     On July 11, 2019, Nino complained that he was "having a really hard time in jail… I cannot stay here for one more month, that is too long. I have a mental disability."

25.     On July 15, 2019, at 12:27 p.m. Nino wrote a note to CFMG staff saying he was on the edge of having psychosis again. When interviewed, Nino asked for his medications to be adjusted, and stated that he needed to be transferred to the crisis stabilization unit. CFMG staff informed Nino that his "concerns would be noted", and encouraged him to use his "coping skills"

26.     At 10:27 p.m. that evening Nino was found lying on the floor of his cell naked. Vomit was on the floor. Nino was hyperventilating and his skin was red and sweaty. He was nonresponsive to questions from correctional deputies or CFMG staff.

27.     At 10:40 p.m. Nino was observed supine on the floor, naked, with his eyes rolled back in his head and shaking with tremor. Nino was still not communicative. CFMG staff noted that Nino could not answer questions, but was crying on and off. A deputy reported that Nino had earlier stated, "I don't want to go back to what I had before." CFMG staff administered Ativan and gave Nino some Gatorade to drink. Nino was able to sit up and drink the Gatorade, and then the tremors returned. CFMG notes state that Nino was shaking and repeatedly saying, "Help me, I want to go to CSU."

28.     CFMG staff discussed returning Nino to the CSU with the supervising sergeant at the jail, who replied that he would not consider it an option. An on-call doctor was contacted who recommended a shot of Ativan and Nino was placed in a safety cell once more.

29.     On July 16, 2019 at approximately 9:35 a.m., an observation cell check was conducted by CFMG staff. Nino continued to beg to be transferred to the CSU or Marin General hospital.

30.     On July 17, 2019 at approximately 10:46 a.m., another observation cell check was conducted by CFMG staff. Observation notes indicate Nino asked to be placed back in a regular cell. The notes state: "Can I go to a regular cell? I'm in here because I had a bad reaction to my medication. I went to Marin General and I got a shot of Depakote and then when I got back here he was increasing my dose every day, then cut me off all of a sudden. I was having an allergic

SCHWAIGER LAW FIRM
130 PETALUMA AVE. STE. 1A
SEBASTOPOL, CA 95472

SCHWAIGER LAW FIRM
130 PETALUMA AVE. STE. 1A
SEBASTOPOL, CA 95472

reaction. I was having psychosis. I need to be in a better environment. This isn't helpful for my mental state. The yelling, the doors slamming, not getting out much. I can't shower by myself. I'm disabled. I can't get the shampoo open with my teeth. I need to get out of here. I'm allergic to Haldol, Depakote, Ativan, and Zyprexa. With Haldol my teeth chatter. I have seizures with Depakote. Ativan makes my body hurt, and Zyprexa gives me sleep paralysis."

31.    At approximately 12:01 p.m., Nino was found seizing on the floor of his cell. A plastic bag, a paper lunch bag, and food wrappers from his lunch were found shoved down his throat. Jail staff cleared Nino's airway and he was taken by ambulance to Sutter Hospital in Santa Rosa for medical clearance to remain in jail, with notes that he should be evaluated for possible suicide attempt upon his return.

32.    At 12:22 p.m. Nino was admitted to Sutter Hospital where he was medically cleared to return to jail at 8:20 p.m. But instead of being placed in a safety cell or in the mental health module, when Nino returned jail staff placed him alone in a booking cell. His vital signs were taken at 8:25 p.m., and a note was made to check them again in four hours.

33.    At some time before 10:00 p.m., Nino reported to jail staff that he was still suicidal, that he was having a bad reaction to his medication, that he should be at the hospital, and that he needed his mother.

34.    At approximately 10:00 p.m. deputies checked on Nino and found him on the floor of the booking cell nonresponsive. Despite his suicide attempt only hours before, his cries for medical attention and statements that he was still suicidal, jail staff gave him a bologna sandwich and left him unattended. Facing the unbearable sadness of his situation, and without the medical intervention he so desperately needed, Nino forced the entire sandwich into his windpipe and asphyxiated himself to death while jail staff attended to other business. His death was mannered a suicide. It is unknown when County or CFMG staff last checked on Nino before he died, or how long he lay on the floor of his jail cell asphyxiating before his body was discovered.

35.     Since Sheriff ESSICK was elected to office in 2018, at least four inmates have died while in the custody of Sonoma County's corrections division. The details of these deaths have never been reported.

36.     Nino Bosco was a mentally ill man in need of acute mental health treatment. He was suicidal and repeatedly expressed to County and CFMG personnel that he was afraid that he would kill himself. He begged for a higher level of treatment, and in so doing was begging for his life. Despite the fact that County and CFMG personnel *knew* that crisis stabilization facilities outside the jail had consistent success ameliorating the symptoms of Nino's illness, and despite the fact that Nino requested over and over to be transferred to a higher level of care, and despite Nino's increasing suicidal ideation, plans of suicide, and a failed suicide attempt, the County and CFMG refused Nino the care he needed, and neglected him at the time he was most vulnerable.

37.     The County of Sonoma, Sheriff Essick, Captain Awad, CFMG, Dr. Fithian, and Doe defendants maintained policies, customs, and/or de facto informal customs, and/or practices of permitting, ignoring, and condoning the following at the Main Adult Detention Facility (MADF) (which individually and collectively resulted in Constitutional violations at MADF with respect to the delivery of mental health care to detainees, including Nino Bosco, and which proximately caused Nino's death by suicide): (1) delaying and failing to respond with adequate mental health assistance when needed and requested; (2) failing to properly observe and treat detainees/inmates with mental illness; (3) failing to adequately provide ongoing mental health screenings and evaluations to persons with mental illness; (4) failing to make timely referrals to mental health professionals when needed; (5) failing to institute adequate treatment plans for those persons at MADF with mental health needs; (6) failing to adequately prescribe, administer, and deliver medications, and failing to provide necessary prescribed medications; (7) failing to complete adequate medical record keeping; (8) failing to have adequate qualified medical and mental health staffing (in both amount and types of providers); (9) failing to have adequate communication between medical, mental health, and custodial staff regarding mental health treatment/care; (10) failing to have adequate supervision of inmates; (11) refusing access and

SCHWAIGER LAW FIRM
130 PETALUMA AVE. STE. 1A
SEBASTOPOL, CA 95472

delivery of mental/medical health care to inmates; (12) failing to adequately monitor inmates/detainees with serious mental and medical health conditions; (13) failing to provide an acceptable continuum of care to inmates/detainees with serious mental and medical health conditions; (14) failing to supervise, report, investigate, and reprimand officers, aides, and medical care providers that engage in wrongful conduct including, but not limited to, taunting inmates, ignoring inmates in distress, and failing to provide/request higher level mental health treatment when plainly indicated; (15) providing inadequately trained and credentialed mental health care staff at MADF, such as nurses and technicians who lack the ability/authority to provide mental health care/treatment/medication to detainees, instead of providing properly credentialed nurses/doctors and, further, having said unqualified/underqualified personnel perform tasks that go beyond their licensure; (16) failing to adequately identify, track, supervise, and monitor prisoners who are at risk for suicide and self-harm due to mental illness; (17) failing to provide adequate mental health therapy at MADF; (18) failing to transfer detainees/inmates with recognized severe mental illness and suicidality, like Nino Bosco, to facilities that can provide adequate mental health care, and instead accepting them into the jail.

38.     The County of Sonoma, Sheriff Essick, Captain Awad, CFMG, Dr. Fithian, and Doe defendants maintained policies, customs, or practices of understaffing MADF with qualified correctional and medical/mental health personnel resulting in a failure to properly monitor inmates particularly where, as with Nino Bosco, mental illness was known and documented and suicidal behavior was ongoing.

39.     The County of Sonoma, Sheriff Essick, Captain Awad, CFMG, Dr. Fithian, and Doe defendants maintained policies, customs, or practices of allowing mentally ill, suicidal inmates to be housed outside of the mental health module and without adequate supervision.

**FIRST CAUSE OF ACTION**

**[42 U.S. CODE § 1983- FOURTEENTH AMENDMENT- DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL/MENTAL HEALTH NEEDS OF NINO BOSCO AND FAILURE TO PROTECT NINO BOSCO FROM HARM (AGAINST ALL DEFENDANTS INCLUDING DOES)]**

41.     Plaintiff re-alleges and incorporate by reference all paragraphs alleged in this Complaint (above and below) as though fully set forth herein.

42.     Nino Bosco had serious medical and mental health needs at all relevant times alleged in this Complaint.

43.     Defendants, including DOES, were, at all relevant times alleged herein, acting under color of law and within the course and scope of their official duties/employment for the COUNTY, and/or CFMG, at the jail. Nino Bosco, at all relevant times alleged herein, was in the custody of the COUNTY, and/or CFMG, at the jail. CFMG, at all relevant times, was under contract with the COUNTY to provide medical/mental health services at the jail to detainees like Nino. By reason of the specific actions and inactions of defendants, including DOES, as detailed above, defendants violated the Constitutional rights and liberty interests of Nino Bosco including, but not limited to, those rights provided to Nino in the Fourteenth Amendment to the United States Constitution including, but not limited to, Nino's right to Constitutionally adequate medical/mental health care while at the jail, and his right to be protected from unnecessary pain/suffering/harm while at the jail. Defendants further violated Plaintiff's individual right, under the Fourteenth Amendment, to not be deprived of her familial relationship with her son without due process of law.

44.     Defendants, including DOES, as provided in-detail above, were deliberately indifferent to Nino's serious medical/mental health needs while he was at the jail, and were deliberately indifferent in failing to protect Nino from unnecessary harm/pain/suffering while he was in their custody. Defendants, and each of them, ignored Nino's serious medical/mental health needs, failed/refused to provide Nino access to, and delivery of, adequate mental health interventions, care, treatment, and further failed to intervene to prevent Nino from committing suicide despite the fact of Nino's numerous calls for help, his obvious suicidality, and a failed suicide attempt only hours earlier by the same modus operandi by which he ultimately succeeded

COMPLAINT FOR DAMAGES

SCHWAIGER LAW FIRM
130 PETALUMA AVE. STE. 1A
SEBASTOPOL, CA 95472

in taking his life.

45.     As a direct and proximate result of defendant's deliberate indifference to Nino's serious medical/mental health needs, Nino's serious but treatable mental health condition worsened until the point that it became fatal. Rather than being provided the mental health treatment he needed, Nino was returned to jail and placed in a booking cell where he ultimately died under the watch of these defendants while they attended to tasks they believed were more important than Nino's life. This caused Nino to suffer cruel and unusual punishment, and both physical pain and mental anguish, in violation of his Fourteenth Amendment rights as a pretrial detainee, and, ultimately, resulted in Nino's death at the jail by suicide.

46.     As a further direct and proximate result of defendants' actions and inactions, Plaintiff was deprived of her personal Constitutional rights to familial relations with her son, Nino, under the Fourteenth Amendment as detailed above.

47.     Plaintiff, in addition to her personal claims, seeks damages for the pain and suffering caused to her son prior to his death by suicide. This claim is brought as a survival action on Nino's behalf and seeks damages, specifically, for the loss of Nino's right to life, as well as the physical injuries, pain, emotional anguish, and trauma that Nino suffered prior to his death.

48.     The acts complained of herein resulted in unwarranted interference with Plaintiff's Fourteenth Amendment right to familial relations with her son, and Plaintiff claims damages in this action for loss of such rights. Plaintiff has suffered loss of her familial relationship with Nino, including the loss of society, comfort, companionship, solace, love, affection, services, and moral support and has, further, incurred burial and funeral expenses.

49.     Under 42 U.S.C. § 1988 Plaintiff is entitled to, and demands, an award of reasonable attorneys' fees and costs on this cause of action.

50.     Each defendant, including DOES, acted intentionally, recklessly, and/or with callous indifference to Nino's serious medical/mental health needs and to Plaintiff's, and to Nino's Constitutional rights. As such defendants should be assessed punitive damages on this cause of action.

SCHWAIGER LAW FIRM
130 PETALUMA AVE. STE. 1A
SEBASTOPOL, CA 95472

SCHWAIGER LAW FIRM
130 PETALUMA AVE. STE. 1A
SEBASTOPOL, CA 95472

**SECOND CAUSE OF ACTION**
**[42 U.S. CODE § 1983- FOURTEENTH AMENDMENT- INADEQUATE POLICIES,**
**CUSTOMS, AND/OR PRACTICES RESULTING IN DEPRIVATION OF MEDICAL/MENTAL**
**HEALTH CARE TO NINO BOSCO, AND FAILURE TO PROTECT**
**NINO BOSCO FROM HARM (AGAINST ALL DEFENDANTS INCLUDING DOES)]**

51.     Plaintiff realleges and incorporates by reference all paragraphs alleged in this Complaint (above and below) as though fully set forth herein.

52.     Defendants COUNTY and CFMG had inadequate policies, customs, and/or practices with respect to providing medical/mental health care to detainees at the jail, and with respect to protecting detainees like Nino from unnecessary harm/pain/suffering while in their custody, including, but not limited to those items listed above in this Complaint.

53.     ESSICK and AWAD are, and at all relevant times were, the COUNTY officials with final policy/decision-making authority with respect to the provision of medical/mental health care at the jail. FITHIAN is and at all relevant times was, the CFMG official charged with final policy/decision-making authority regarding the provision of medical/mental health care at the jail.

54.     By reason of the actions and inactions of defendants, as detailed above, defendants, including DOES, violated the Constitutional rights and liberty interests of Nino Bosco by violating his Fourteenth Amendment right to Constitutionally adequate medical/mental health care while at the jail, and his Constitutional right to be protected from unnecessary pain/suffering/harm while at the jail. Defendants further violated Plaintiff's individual rights under the Fourteenth Amendment, to not be deprived of her familial relationship with her son without due process of law.

55.     CFMG and FITHIAN have a history of failing to provide even minimally adequate medical/mental health care to prisoners at the jail and, generally, at jails and custodial facilities around the State of California where CFMG is the contract medical provider. This has resulted in more than twenty-five civil rights lawsuits against CFMG and FITHIAN in the Northern District of California alone. CFMG and FITHIAN's substandard and constitutionally deplorable care is explained, at least in part, due to the fact that CFMG charges a flat rate for mental health care at the jail to the COUNTY, regardless of the number of hours or length of time necessary for CFMG

- 14 -

to complete their services, clearly incentivizing FITHIAN and CFMG to provide the most minimal care possible at the jail so as to maximize profits.

56.     The COUNTY, ESSICK, and AWAD are aware of this problem paradigm, as well as the history of civil rights litigation arising from it, but have nevertheless elected and continued to use CFMG's services as a cost-saving measure for the COUNTY (of all the bids received for contract mental health services at the jail, CFMG's was the lowest), and have thereby knowingly and willingly exposed hundreds of vulnerable members of their community to unnecessary risk and constitutionally inadequate care in situations where the inmates have literally nowhere else to go.

57.     In 2015 Disability Rights California (DRC), the state and federally designated protection and advocacy agency charged with protecting the rights of people with disabilities in California, issued a report concerning conditions at the Sonoma County Main Adult Detention Facility. The report documented improper mental health practices and inadequate mental health care, undue and excessive isolation and solitary confinement of prisoners with disabilities, abuse and neglect of prisoners with disabilities, "striking" conditions in the mental health unit given the high level of acuity and severity of symptoms among prisoners observed, and deficient practices regarding involuntary medication. The report noted that despite a high percentage of the jail population having diagnosed mental illness (40 percent received psychiatric medication), the Sonoma County jail lacked an inpatient unit designated for the treatment of persons with mental illness. The report found: "Sonoma does not have a designated inpatient unit, but the people we observed appeared to need a higher level of care, such as that available in a designated inpatient unit. They also received very limited time outside of their cells, which can be particularly psychologically damaging for prisoners with mental health disorders…"

58.     Of particular relevance, the report found that "the people we observed in the Mental Health Module appeared to be far more acutely mentally ill than in other jails. This could be because prisoners who should have been transferred out to a psychiatric facility were instead retained in the jail (possibly for cost reasons). Alternatively, the lack of proper treatment in the

SCHWAIGER LAW FIRM
130 PETALUMA AVE. STE. 1A
SEBASTOPOL, CA 95472

Jail has led individuals to decompensate. It is critical that Sonoma County either transfer these acutely mentally ill individuals to an appropriate facility or raise the treatment standards in the Jail itself and seek LPS designation."

59.     Despite this damning report, the deficiencies noted by DRC went unaddressed, the mental health services provided in the jail have not been improved, and have in fact deteriorated, and as a direct and proximate result of the above-described policies, customs, and/or practices, Nino Bosco's serious, but treatable, mental health condition went neglected until he took his own life.

60.     This amounted to cruel and unusual punishment, and physical pain and mental anguish in violation of Nino's Fourteenth Amendment rights. The defendants identified in this cause of action, including DOES, knew that the policies, customs, and/or practices were inadequate but, despite this, defendants maintained a deliberate indifference to the serious risk posed by the same. Accordingly, these defendants, including DOES, in doing the above-described actions/inactions, were deliberately indifferent to Nino's serious medical/mental health needs.

61.     As a further direct and proximate result of defendants' actions and inactions Plaintiff was deprived of her personal Constitutional right to familial relations with her son under the Fourteenth Amendment.

62.     Frauka KOZAR, in addition to her personal claim, seeks damages for the pain and suffering caused to Nino Bosco prior to his death by suicide at the jail. This claim is brought as a survival action on Nino's behalf and seeks damages, specifically, for the loss of Nino's right to life as well as the physical injuries, pain, emotional anguish, and trauma that Nino suffered prior to his death due to these defendants' failures and intentional acts in being deliberately indifferent to Nino's medical/mental health needs which directly resulted in his suicide.

63.     The acts complained of herein resulted in unwarranted interference with all Plaintiffs Fourteenth Amendment right to familial relations with her son, and Plaintiff claims damages in this action for loss of such rights. Plaintiff has suffered loss of her familial relationship with Nino, including the loss of society, comfort, companionship, solace, love,

SCHWAIGER LAW FIRM
130 PETALUMA AVE. STE. 1A
SEBASTOPOL, CA 95472

affection, services, and moral support and has, further, incurred burial and funeral expenses.

64.     Under 42 U.S.C. § 1988 Plaintiff is entitled to, and demands, an award of reasonable attorneys' fees and costs on this cause of action.

65.     Each defendant, including DOES, acted intentionally, recklessly, and/or with callous indifference to Nino Bosco's serious medical/mental health needs and to Plaintiff, and to Nino's, Constitutional rights. As such defendants should be assessed punitive damages on this cause of action.

### THIRD CAUSE OF ACTION
**[42 U.S. CODE § 1983- FOURTEENTH AMENDMENT- FAILURE TO TRAIN/SUPERVISE RESULTING IN DEPRIVATION OF MEDICAL/MENTAL HEALTH CARE TO NINO BOSCO, AND FAILURE TO PROTECT NINO BOSCO FROM HARM (AGAINST ALL DEFENDANTS INCLUDING DOES)]**

66.     Plaintiff realleges and incorporate by reference all paragraphs alleged in this Complaint (above and below) as though fully set forth herein.

67.     Defendants COUNTY and CFMG had inadequate training/supervision, or no training/supervision at all, at the jail to assure that employees/agents provided proper medical/mental health care to prisoners, like Nino Bosco, and to assure that employees/agents protected prisoners, like Nino, from harm by adequately treating mental illness and preventing suicide.

68.     COUNTY, CFMG, ESSICK, AWAD, and FITHIAN were aware, or should have been aware (due to numerous past suicides at the jail), that employees/agents were not adequately trained/supervised to: (1) provide timely access to and delivery of mental and medical care to inmates when needed and requested; (2) transport mentally ill individuals to approved mental health facilities for treatment and assessment when necessary; (3) periodically monitor suicidal detainees; (4) provide adequate mental health visits; (5) detect suicide signs and report same; (6) utilize video monitoring of the booking cell to assure the welfare of detainees; (7) refuse to house prisoners who have mental health needs that exceed the capabilities of the jail, 8) and to provide timely and adequate suicide risk assessments.

69.     ESSICK and AWAD are, and at all relevant times were, the COUNTY officials

SCHWAIGER LAW FIRM
130 PETALUMA AVE. STE. 1A
SEBASTOPOL, CA 95472

with final policy/decision-making authority with respect to the provision of medical/mental health care at the jail and training/supervision of employees/agents at the jail.

70.     FITHIAN is, and at all relevant times was, the CFMG official charged with final policy/decision-making authority regarding the provision of medical/mental health care at the jail and the training/supervision of employees/agents working at the jail.

71.     By reason of the actions and inactions of defendants, as detailed above, defendants violated the Constitutional rights and liberty interests of Nino Bosco including, but not limited to, Nino's Fourteenth Amendment right to Constitutionally adequate medical/mental health care while at the jail, and his Constitutional right to be protected from unnecessary pain/suffering/harm while in their custody. Defendants, further, violated Plaintiff's individual rights, under the Fourteenth Amendment, to not be deprived of her familial relationship(s) with her son, Nino, without due process of law.

72.     Prior to Nino's suicide, there was a history of numerous suicides at the jail twenty years. Defendants COUNTY, CFMG, ESSICK, AWAD, and FITHIAN were well aware of this history of suicide at the jail. On information and belief, the suicide rate at the Sonoma County jail is much higher than the national average for jails with an equivalent inmate population.

73.     CFMG and FITHIAN have a history of failing to provide even minimally adequate medical/mental health care to prisoners at the jail and, generally, at jails and custodial facilities around the State of California where CFMG is the contract medical provider. This has resulted in numerous civil rights lawsuits against CFMG and FITHIAN. CFMG and FITHIAN's substandard and constitutionally deplorable care is explained, at least in part, due to the fact that CFMG charges a flat rate for medical care at the jail to the COUNTY (per prisoner, per day) which incentivizes FITHIAN and CFMG to provide the most minimal care possible at the jail so as to maximize profits.

74.     As a direct and proximate result of the above-described policies, customs, and/or practices, Nino Bosco's serious, but treatable, mental health condition went neglected until Nino took his own life. This amounted to cruel and unusual punishment, and physical pain and mental

SCHWAIGER LAW FIRM
130 PETALUMA AVE. STE. 1A
SEBASTOPOL, CA 95472

anguish in violation of Nino's Fourteenth Amendment rights. The defendants identified in this cause of action, including DOES, knew that the policies, customs, and/or practices were inadequate but, despite this, defendants maintained a deliberate indifferent to the serious risk posed by the same. Accordingly, these defendants, including DOES, in doing the above-described actions/inactions, were deliberately indifferent to Nino's serious medical/mental health needs.

75.   As a further direct and proximate result of defendants' actions and inactions Plaintiff was deprived of her personal Constitutional right to familial relations with her son under the Fourteenth Amendment.

76.   Frauka KOZAR, in addition to her personal claim, seeks damages for the pain and suffering caused to Nino Bosco prior to his death by suicide at the jail. This claim is brought as a survival action on Nino's behalf and seeks damages, specifically, for the loss of Nino's right to life as well as the physical injuries, pain, emotional anguish, and trauma that Nino suffered prior to his death due to these defendants' failures and intentional acts in being deliberately indifferent to Nino's medical/mental health needs which directly resulted in his suicide.

77.   The acts complained of herein resulted in unwarranted interference with all Plaintiffs Fourteenth Amendment right to familial relations with her son, and Plaintiff claims damages in this action for loss of such rights. Plaintiff has suffered loss of her familial relationship with Nino, including the loss of society, comfort, companionship, solace, love, affection, services, and moral support and has, further, incurred burial and funeral expenses.

78.   Under 42 U.S.C. § 1988 Plaintiff is entitled to, and demands, an award of reasonable attorneys' fees and costs on this cause of action.

79.   Each defendant, including DOES, acted intentionally, recklessly, and/or with callous indifference to Nino Bosco's serious medical/mental health needs and to Plaintiff, and to Nino's, Constitutional rights. As such defendants should be assessed punitive damages on this cause of action.

SCHWAIGER LAW FIRM
130 PETALUMA AVE. STE. 1A
SEBASTOPOL, CA 95472

SCHWAIGER LAW FIRM
130 PETALUMA AVE. STE. 1A
SEBASTOPOL, CA 95472

**FOURTH CAUSE OF ACTION**

**[42 U.S. CODE § 12312 – AMERICANS WITH DISABILITIES ACT – FAILURE TO ACCOMMODATE NINO BOSCO'S MENTAL DISABILITY, AND DISCRIMINATION AGAINST NINO BOSCO BASED ON MENTAL DISABILITY (AGAINST COUNTY, CFMG AND DOE DEFENDANTS)]**

80.     Plaintiff realleges and incorporates by reference all paragraphs (above and below) in this Complaint as though fully set forth herein.

81.     The ADA prohibits the COUNTY from denying a qualified individual with a disability the benefits of the services, programs, or activities of the public entity because of the individual's disability.

82.     Defendants COUNTY and CFMG are legally responsible for all violations of the ADA committed by CFMG in the course of CFMG's contract work to and for the COUNTY providing medical/mental health care services to prisoners in the jail.

83.     The ADA defines "a qualified individual with a disability" as a person who suffers from a "physical or mental impairment that substantially limits one or more major life activities," including, but not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."

84.     Nino Bosco, from the time he was arrested and brought to the jail on June 2, 2019, through his death by suicide at the jail on July 17, 2019, suffered from a mental impairment that limited his major life activities in that he suffered from severe and obviously debilitating acute mental illness. Nino Bosco was a "qualified individual with a disability" from the time of his arrest until he died at the jail within the plain language of the ADA.

85.     The COUNTY and CFMG violated 42 U.S. Code§ 12132 (ADA) in that The COUNTY and CFMG knew of Nino's mental disability, as detailed specifically above, but discriminated against Nino based on that disability, and failed to reasonably accommodate that disability. This discrimination and failure to reasonably accommodate Nino led him to suffer unnecessarily, and ultimately to commit suicide to end his suffering.

86.     As a direct and proximate result of defendants' actions and inactions as alleged herein Nino Bosco, through his successor-in-interest, is entitled to damages in an amount

- 20 -

according to proof at trial and as allowed by law including, but not limited to, attorneys' fees and costs pursuant to 42 U.S.C. § 12205.

### FIFTH CAUSE OF ACTION
#### [WRONGFUL DEATH ARISING FROM NEGLIGENCE (AGAINST CFMG, FITHIAN, AND DOE DEFENDANTS)]

87.     Plaintiff realleges and incorporates by reference all paragraphs in this Complaint (above and below) as though fully set forth herein.

88.     Nino Bosco was in the custody of defendants, including DOES, at the jail at the time of his death. Defendants, including DOES, each owed a duty to Nino as detailed in this Complaint.

89.     Defendants, and employees/agents of defendants acting within the course and scope of their employment/agency, including DOES, negligently, carelessly, and unskillfully cared for, attended to, handled, controlled, supervised, and monitored Nino as detailed above and below in this Complaint.

90.     Defendants, and each of them, also failed to supervise, train, and monitor subordinates and failed to timely obtain adequate mental health care for Nino prior to his suicide as detailed in this Complaint.

91.     Defendants CFMG, FITHIAN and DOES are, and at all relevant times were, medical providers and each breached the applicable medical and professional standard of care with respect to Nino Bosco as detailed in this Complaint.

92.     Nino's death was a direct and proximate result of the wrongful and/or negligent acts and/or omissions of defendants as detailed above. Defendants' acts and/or omissions, and each of them, were a direct and proximate cause of Plaintiff' injuries and damages, as alleged herein.

93.     As a direct and proximate result of Defendants' actions and inactions at the jail, Nino Bosco committed suicide. As such Plaintiff is entitled to recover damages for wrongful death in an amount according to proof at trial and as allowed by law.

SCHWAIGER LAW FIRM
130 PETALUMA AVE. STE. 1A
SEBASTOPOL, CA 95472

SCHWAIGER LAW FIRM
130 PETALUMA AVE. STE. 1A
SEBASTOPOL, CA 95472

### SIXTH CAUSE OF ACTION
### [NEGLIGENCE PER SE (AGAINST CFMG, FITHIAN, AND DOE DEFENDANTS)]

94.     Plaintiff realleges and incorporates by reference all paragraphs in this Complaint (above and below) as though fully set forth herein.

95.     Pursuant to California Government Code § 845.6 Defendants, including DOES, had a duty to monitor, check, and respond to Nino while he was at the jail. Further, defendants had a duty to summon needed medical/mental health care for Nino and to protect him from harm while he was in their custody.

96.     Defendants, and each of them, knew, or had reason to know that Nino was in need of acute psychiatric and mental health care, and that he was a suicide risk, and that he was actively in the process of attempting suicide for a drawn-out period of time while they were engaged in other, more pressing business, as described above in this Complaint. Despite this knowledge Defendants, including DOES, and each of them, failed to take reasonable action to summon medical/mental health care for Nino, or to come to his aid, or to reasonably check on his safety.

97.     As a direct and proximate result of defendants' actions and inactions at the jail, Nino committed suicide. As such Plaintiff is entitled to recover damages for wrongful death in an amount according to proof at trial and as allowed by law.

### SIXTH CAUSE OF ACTION
### [CIVIL CODE § 51 - UNRUH ACT – FAILURE TO ACCOMMODATE NINO BOSCO'S MEDICAL CONDITION/MENTAL DISABILITY AND DISCRIMINATION AGAINST NINO BOSCO BASED ON HIS MEDICAL CONDITION/MENTAL DISABILITY (AGAINST CFMG, FITHIAN, AND DOE DEFENDANTS)]

98.     Plaintiff realleges and incorporates by reference all paragraphs (above and below) in this Complaint as though fully set forth herein.

99.     California Civil Code § 51 provides that "[a] violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section." As alleged in the preceding cause of action, Nino Bosco's rights under the ADA were violated and, accordingly, a violation of California Civil Code § 51 also occurred.

100.   The ADA prohibits defendants from denying a qualified individual with a disability ... the benefits of the services, programs, or activities of the public entity because of the individual's disability.

101.   Defendant CFMG is legally responsible for all violations of the ADA committed by its employees and agents in the course of CFMG's contract work to and for the COUNTY providing medical/mental health care services to prisoners in the jail.

102.   The ADA defines "a qualified individual with a disability" as a person who suffers from a "physical or mental impairment that substantially limits one or more major life activities," including, but not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."

103.   Nino Bosco, from the time he was arrested and brought to the jail on June 2, 2019, through his death by suicide at the jail on July 17, 2019, suffered from a mental impairment that limited his major life activities in that he suffered from severe and obviously debilitating acute mental illness. Nino Bosco was a "qualified individual with a disability" from the time of his arrest until he died at the jail within the plain language of the ADA.

104.   CFMG violated 42 U.S. Code§ 12132 (ADA) in that CFMG knew of Nino's mental disability, as detailed specifically above, but discriminated against Nino based on that disability, and failed to reasonably accommodate that disability. This discrimination and failure to reasonably accommodate Nino led him to suffer unnecessarily, and ultimately to commit suicide to end his suffering.

105.   CFMG is liable to Nino Bosco, via successor-in-interest, for all remedies allowed under Civil Code 52 including, but not limited to, treble damages and attorney's fees.

WHEREFORE, Plaintiff prays for relief as follows:

1.   For general damages according to proof on the appropriate causes of action;

2.   For special damages according to proof on the appropriate causes of action;

3.   For pecuniary damages according to proof on the appropriate causes of action;

SCHWAIGER LAW FIRM
130 PETALUMA AVE. STE. 1A
SEBASTOPOL, CA 95472

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SCHWAIGER LAW FIRM
130 PETALUMA AVE. STE. 1A
SEBASTOPOL, CA 95472

4.      For punitive damages according to proof against the appropriate defendants on the appropriate causes of action;

5.      For treble damages according to proof against the appropriate defendants on the appropriate causes of action;

6.      For funeral and burial expenses on the appropriate causes of action;

7.      For wrongful death damages according to proof on the appropriate causes of action;

8.      For costs of suit;

9.      For prejudgment interest;

10.     For attorneys' fees and costs pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 12205, Civil Code 52 and otherwise against the appropriate defendants on the appropriate causes of action;

11.     For such other relief as the Court may deem proper.

**JURY TRIAL DEMAND**

Plaintiff hereby requests a jury trial on all issues so triable.

Dated: July 20, 2020                              **SCHWAIGER LAW FIRM**

_/s/ Izaak D. Schwaiger_
Izaak D. Schwaiger
Attorney for Plaintiffs

- 24 -
COMPLAINT FOR DAMAGES