Izaak D. Schwaiger, SBN 267888
**SCHWAIGER LAW FIRM**
130 Petaluma Avenue, Suite 1A
Sebastopol, CA 95472
Tel: (707) 595-4414
Fax: (707) 581-1983
izaak@izaakschwaiger.com

John Houston Scott, SBN 72578
**SCOTT LAW FIRM**
1388 Sutter Street, Suite 715
San Francisco, CA 94109
Tel: (415) 561-9601
Fax: (415) 561-9609
john@scottlawfirm.net

Attorneys for Plaintiffs ESTATE OF NINO BOSCO,
by and through successor in interest, FRAUKA KOZAR,
and FRAUKA KOZAR individually.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF NINO BOSCO, by and through successor in interest, FRAUKA KOZAR, and FRAUKA KOZAR individually, <br><br>   Plaintiffs, <br> v. <br><br> COUNTY OF SONOMA, MARK ESSICK, MAZEN AWAD, CALIFORNIA FORENSIC MEDICAL GROUP (CFMG), and DOES 1-50, inclusive. <br><br>   Defendants. | Case No: 3:20-cv-04859-CRB <br><br> **PLAINTIFFS' MOTION FOR SANCTIONS** <br><br> Date: November 5, 2021 <br> Time: 10:00 a.m. <br> Courtroom: 6, 17th Floor, 450 Golden Gate Ave., San Francisco, CA <br> Judge: The Honorable Charles R. Breyer |

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

TIMELINE OF PERTINENT EVENTS...................................................................................... 2

ARGUMENT ................................................................................................................................ 5

      A.     Introduction .................................................................................................... 5

      B.     Law Regarding Spoliation of Evidence and Related Sanctions............................ 6

      C.     Severe Sanctions are Appropriate Where Video Evidence is the Best Evidence of an Event in Dispute ............................................................................. 9

      D.     The Appropriate Sanction ............................................................................. 10

           1.     The Existence of Extraordinary Circumstances ......................................... 10

           2.     Willfulness, Bad Faith or Fault .................................................................. 11

           3.     Nexus Between Sanctions, Misconduct and Matters in Controversy ………………………………………………………….…11

           4.     Risk of Prejudice to the Plaintiffs ............................................................... 11

           5.     Public Policy Favoring Disposition of Cases on their Merits ................... 12

CONCLUSION ........................................................................................................................... 14

# **TABLE OF AUTHORITIES**

## **CASES**

*Anheuser-Busch, Incorporated v. Natural Beverage Distributors,* 69 F.3d 337 (9th Cir.1995) .... 7

*Castro v County of Los Angeles,* 833 F.3d 1060 (9th Cir. 2016) ...................................................... 5

*Consumer Financial Protection Bureau v. Morgan Drexen, Inc.*, 101 F.Supp.3d 856
   (C.D. Cal. 2015) ........................................................................................................................ 9

*Doe v. County of San Mateo*, 2017 WL 6731649 (N.D. 2017) ....................................................... 10

*Farmer v Brennan,* 511 U.S. 825 (1994) ......................................................................................... 5

*Glover v. BIC Corporation.,* 6 F.3d 1318 (9th Cir.1993) ................................................................ 7

*Halaco Engineering Company v. Costle,* 843 F.2d 376 (9th Cir.1988) ....................... 7, 8, 9, 10, 11

*Jerry Beeman & Pharmacy v. Caremark, Inc.*, 322 F.Supp.3d 1027 (C.D. Cal. 2018) .................. 8

*Leon v. IDX Systems Corporation.,* 464 F.3d 951 (9th Cir.2006) .................................. 7, 8. 10, 12

*Lolli v County of Orange,* 351 F.3d 410 (9th Cir. 2003) ................................................................. 5

*Micron Technology., Incorporated v. Rambus, Incorporated.,* 645 F.3d 1311 (Fed. Cir. 2011) ... 6

*Mizzoni v. Nevada*, 2017 WL 4284597 (D. Nevada 2017) ............................................................ 10

*In re Napster, Incorporated Copyright Litigation.,* 462 F.Supp.2d 1060 (N.D.Cal.2006) ............. 6

*North American Watch Corporation v. Princess Ermine Jewels,* 786 F.2d 1447 (9th Cir.1986)... 8

*Omnigen Research v. Yongqiang Wang,* 321 F.R.D. 367 (D. Oregon 2017) ................................. 8

*Oracle American., Incorporated v. Hewlett Packard Enterprise Company,* 328 F.R.D.
   543 (N.D. Cal. 2018) ................................................................................................................. 6

*Phan v. Costco Wholesale Corp.*, 2020 WL 5074349 (N.D. Cal. 2020) ....................................... 10

*Peschel v. City of Missoula,* 664 F.Supp.2d 1137 (D. Mont. 2009) ............................................... 9

*Pettit v. Smith*, 45 F.Supp.3d 1099 (D. Arizona, 2014) ................................................................ 10

*Silvestri v. General Motors Corporation.,* 271 F.3d 583 (4th Cir.2001) ....................................... 8

*In re Slimick v. Silva,* 928 F.2d 304 (9th Cir.1990) ........................................................................ 8

*United Artists Corporation v. La Cage Aux Folles, Incorporated.,* 771 F.2d
   1265 (9th Cir.1985) ................................................................................................................... 8

*United States v. Kitsap Physicians Service.,* 314 F.3d 995 (9th Cir.2002) .................................... 7

*United States v. National Medical Enterprises, Incorporated.,* 792 F.2d 906 (9th Cir.1986) ........ 7

## **STATUTES**

42 U.S.C. § 1983 .................................................................................................... 5

Fed.R.Civ.P. 37 ...................................................................................................... 8

Fed.R.Civ.P. 37(b)(2)(A) ....................................................................................... 7

Fed.R.Civ.P. 37 (e)(2) ............................................................................................ 4

**PLEASE TAKE NOTICE THAT** on November 5, 2021 at 10:00 a.m., or as soon thereafter as may be heard before Judge Charles R. Breyer, at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, Courtroom 6, 17th Floor, San Francisco, California, Plaintiffs Estate of Nino Bosco, by and through successor in interest, Frauka Kozar, and Frauka Kozar, individually ("Plaintiffs") will move this Court for a Motion for Sanctions.

This motion for sanctions is made and based on this Notice of Motion and Motion, the following Memorandum in support of this motion, and the Declaration of Izaak D. Schwaiger, all of which are served and filed contemporaneously herewith, as well as the Court files herein, and any arguments and/or evidence presented at the time of the hearing.

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS

### INTRODUCTION

This is a case of an in-custody suicide by an acutely mentally ill man. On July 17, 2019, Nino Bosco killed himself by shoving a bologna sandwich into his windpipe, after having just been returned to the jail from a hospital following an earlier suicide attempt only hours before where he attempted to asphyxiate himself by shoving items from his lunch down his windpipe.

Upon his return from the hospital, Nino reported to jail staff that he was still suicidal and that he should be at the hospital. Instead, jail staff placed Nino in a safety cell in the booking area where he was given food items and left unsupervised. Surveillance video of the booking area shows that jail staff observed Nino for a total of four seconds during the one hour and thirty-five minutes before he was discovered unresponsive.

In the course of discovery, Plaintiffs requested the County produce all video of Nino during his time in the jail. After significant delays and the filing of a discovery dispute letter, the County finally produced the videos, but the fourteen minutes surrounding Nino's death were omitted. Plaintiffs followed up with numerous requests that the missing videos be produced, and for an explanation for why they had not been produced to-date. In response, the County claimed it

- 1 -

PLAINTIFFS' MOTION FOR SANCTIONS

had produced all of the video that it had, provided no explanation for the missing videos, and questioned why Plaintiffs' counsel believed the County had a duty to preserve the videos in the first place.

**TIMELINE OF PERTINENT EVENTS**

On July 17, 2019, Nino Bosco died in the custody of the Sonoma County Sheriff.

On July 30, 2019, Plaintiffs' previous counsel, Michael Green, submitted a Public Records Act request to the County of Sonoma requesting, inter alia, "all videos of Nino Bosco while in his cell at Sonoma County jail." (See Exhibit 1 to the Declaration of Izaak Schwaiger, filed concurrently herewith, and hereinafter "Schwaiger Dec.")

On September 6, 2019, the County's attorney, Mr. Lilligren, responded to Plaintiffs' PRA request stating, "the Sheriff's Office is not required to produce any of the requested video, which is [sic] exempt from disclosure in response to a Public Records Act Request." (See Exhibit 1 to Schwaiger Dec.)

On July 20, 2020, Plaintiffs filed their complaint in the instant matter. (Doc. 1.)

January 29, 2021, Plaintiffs served a request for production upon the County seeking "all video surveillance of Nino Bosco from June 11, 2019 to his death on July 17, 2019." (See Exhibit 2 to Schwaiger Dec.)

On March 1, 2021, the County agreed to produce "all video recordings in their possession of Nino Bosco on July 17, 2019, subject to and upon entry of a Stipulated Protective Order in this case."

On April 16, 2021, the Court signed the parties' proposed protective order. (Doc. 32.)

On May 5, 2021, despite numerous further requests from Plaintiffs' counsel, the County had still not delivered the videos, so Plaintiffs filed notice of a discovery dispute, and requested a referral to a magistrate judge for resolution of that dispute. (Doc. 33.)

On May 7, 2021, the County delivered 32 gigabytes of materials to Plaintiffs' Counsel which included fourteen video files. (See Schwaiger Dec.)

On May 13, 2021, the parties filed a notice of resolution of the discovery dispute, and requested the referral to a magistrate judge be vacated. (Doc. 36.)

In early September, Plaintiffs' Counsel became aware that the videos provided by the County were incomplete. Specifically, two overhead surveillance cameras captured the events leading up to Nino's death. Video from the first camera runs from 8:18-9:26 p.m. Video from the second camera runs from 8:18-9:52 p.m. The last safety check performed on Nino's cell that is recorded on video occurred at 9:49 p.m. Nino is reported by the County to have been discovered unresponsive at 10:02 p.m., but that cell check is not recorded on the videos that have been provided, nor is Nino's removal from his cell. The County has provided video footage from a handheld camera that shows resuscitation efforts once Nino is out of his cell. That footage begins at approximately 10:06 p.m. The gap in recorded video footage is fourteen minutes. (See Schwaiger Dec.)

The video footage that was selected and provided to the Internal Affairs investigators was collected by the very same watch commander who approved Nino's placement in the safety cell to begin with. It contained no footage of these fourteen minutes, yet the Internal Affairs investigation makes no note of the missing video. (*Id.*)

On September 13, 2021, Plaintiffs' counsel alerted defense counsel that the videos produced were incomplete. (See Exhibit 3 to See Schwaiger Dec.)

On September 14, 2021, all counsel met and conferred regarding outstanding discovery items. No explanation was provided by the County for the missing videos. Counsel for the County represented that he had provided all the videos in his possession. (See Schwaiger Dec.)

On September 15, 2021, Plaintiffs' Counsel emailed Mr. Lilligren and asked the County to confirm that they had no overhead surveillance videos from 9:52 p.m. onward. Plaintiffs' Counsel requested Mr. Lilligren "confirm that the video has been destroyed and why, or alternatively why I have not received it." (See Exhibit 4 to Schwaiger Dec.)

On September 17, 2021, Plaintiffs' Counsel sent another email to Mr. Lilligren asking him to respond. (*Id.*)

On September 20, 2021, Mr. Lilligren responded, "this will confirm that the County has produced all available video related to the Bosco incident on July 19, 2019. At my request the Sheriff's Office is attempting to determine whether there is any additional video that may exist related to the incident and I will let you know once I receive additional information .... All of the cell checks noted on the observation log are reflected on the videos that have been produced." (*Id.*)

On September 21, 2021, Plaintiffs' Counsel emailed Mr. Lilligren the following: "The [Inmate Observation Record] states that the final cell check was performed at 2202. The video that you have provided appears to end at 2152. Did I miss another video you may have sent?" Mr. Lilligren did not respond. (*Id.*)

On September 22, 2021, Plaintiffs' Counsel informed the County that if the outstanding videos were not produced by September 27, that the Plaintiffs would seek an appropriate remedy up to and including default judgment. Plaintiffs' Counsel further wrote, "If you would like me to consider any reasons why I should not pursue the motion, why you believe the spoliation is excusable, what diligence was exercised for their preservation, etc., please let me know that as well." (*Id.*)

On September 27, 2021, Plaintiffs' Counsel had still not received any video, but did receive an email from Mr. Lillligren stating, "any video that may be lost at this point was not the result of any intentional act on the part of the Sheriff's Office within the meaning of FRCP 37(e)(2) such that the sanctions you intend to pursue are not warranted. Despite what the Sheriff's Office may have done independently as part of its investigation, I am also unclear why you believe there was a duty to preserve the video prior to the lawsuit being served on the County." (See Exhibit 5 to Schwaiger Dec.)

The Sonoma County Sheriff's Office Policy 305.1 states that the Sheriff's Office "will follow the procedures and guidelines set forth in the Sonoma County Chief's Association Policy 93-1: Employee Involved Critical Incident Protocol." That protocol defines a critical incident as including "Fatal injury while a person is in law enforcement custody which includes suicide…"

The protocol further states that "When a Law Enforcement Employee-Involved Critical Incident occurs, the criminal investigation provisions of this Protocol shall be immediately invoked…" Those provisions require the investigating agency to "[a]ssign a trained evidence technician or crime scene investigator to collect, preserve, process, and document evidence." The provision further states that the lead agency "[i]s responsible for documentation of the scene and for the collection, preservation and analysis of physical evidence." The provision also requires that "[e]videntiary items are maintained by the lead agency until such time as otherwise directed by the Office of the District Attorney, court order, statute, or mutual agreement between the lead and venue agency." (See Exhibits 6 and 7 to Schwaiger Dec.)

Despite these many mandates for collection and preservation of this evidence, and dispite the County having preserved other video associated with this case, the County suggests it had no duty to preserve the videos in question, and that it had no reason to anticipate there might be litigation following the in-custody death of a mentally ill man.

## ARGUMENT

### A.   Introduction

Plaintiffs' claim Defendants violated the decedent's Fourteenth Amendment rights because they were deliberately indifferent to Nino's serious medical needs. Such indifference can support a Fourteenth Amendment cause of action brought under Section 1983. *Castro v County of Los Angeles,* 833 F.3d 1060 (9th Cir. 2016) (*en banc*). The deliberate indifference standard does not require proof that jail officials acted with a purpose to harm or knowledge that harm would result from their actions. *Farmer v Brennan*, 511 U.S. 825, 835 (1994). Rather the deliberate indifference test has two prongs: (1) whether a person was confined under conditions posing a serious risk of serious harm, and (2) whether the correctional staff were deliberately indifferent to that risk. *Lolli v County of Orange*, 351 F.3d 410, 420 (9th Cir. 2003).

Among the most central issues to this case, therefore, is whether correctional staff were indifferent to the known risk that Nino would attempt suicide after being placed in a safety cell in the booking area. The best evidence of that indifference is the video surveillance footage recorded

from two cameras in the booking area. These surveillance cameras captured the woefully inadequate observations of Nino before his death, jail officials' discovery of Nino unresponsive in his cell, as well Nino's removal from the safety cell before resuscitation efforts took place. But these video recordings stop without explanation prior to the last recorded safety check. For the fourteen minutes most critical to this litigation, no video record exists. This is not a case where the video evidence did not exist or was not retained. Rather, portions of the video were selectively preserved while the most probative portions of those recordings were deselected for preservation.

### B.  Law Regarding Spoliation of Evidence and Related Sanctions

A duty to preserve evidence arises when a party knows or should know that the information is relevant to pending or future litigation.  Whether litigation is reasonably foreseeable is a fact specific standard that allows the district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry. *Oracle Am., Inc. v. Hewlett Packard Enter. Co.* 328 F.R.D. 543, 549 (N.D. Cal. 2018); see also, *Micron Tech., Inc. v. Rambus, Inc.,* 645 F.3d 1311, 1320 (Fed. Cir. 2011).

A party must preserve evidence it knows or should know is relevant to a claim or defense of any party, or that may lead to the discovery of relevant evidence. *United States v. Kitsap Physicians Serv.,* 314 F.3d 995, 1001 (9th Cir.2002). The duty to preserve arises not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation. *In re Napster, Inc. Copyright Litig.,* 462 F.Supp.2d 1060, 1067 (N.D.Cal.2006).) As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, or is the subject of a pending discovery request. *In re Napster, Inc.,* 462 F.Supp.2d at 1067.

Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. *Kitsap Physicians Serv.,* 314 F.3d at 1001.

A party's destruction of evidence is considered "willful" if the party "has some notice that the [evidence was] potentially relevant to the litigation before [it was] destroyed." *Leon v. IDX Sys. Corp.,* 464 F.3d 951, 959 (9th Cir.2006)  Once the duty to preserve attaches, a party must suspend any existing policies related to deleting or destroying files and preserve all relevant documents related to the litigation.

A district court may, under its inherent power to control litigation, levy sanctions for the spoliation of evidence. *Leon v. IDX Systems Corp.,* 464 F.3d 951, 958 (9th Cir.2006) (citing *Anheuser–Busch, Inc. v. Natural Beverage Distributors,* 69 F.3d 337, 348 (9th Cir.1995)). Sanctions may be levied, however, only when a party knew, or reasonably should have known, that the spoliated evidence was potentially relevant to a claim. *Glover v. BIC Corp.,* 6 F.3d 1318, 1329 (9th Cir.1993). Bad faith is not required to justify the imposition of sanctions for the spoliation of evidence. *Id.*; *See also Leon,* 464 F.3d 951, 959.

Included within the repertoire of available sanctions is the court's ability to: (1) exclude evidence, including spoiled evidence; (2) admit evidence of the circumstances of the destruction or spoliation; or (3) instruct the jury that it may infer that the spoiled or destroyed evidence would have been unfavorable to the responsible party. *Glover,* 6 F.3d at 1329. In the exercise of its inherent power, a court may also look to Fed.R.Civ.P. 37(b)(2)(A) for guidance as to other alternative sanctions such as directing designated facts be taken as established for purposes of the action.

In appropriate circumstances the court may also dismiss an action or enter a default judgment. *Leon v. IDX Systems Corp.,* 464 F.3d at 958; *See also Halaco Engineering Co. v. Costle,* 843 F.2d 376, 380 (9th Cir.1988). One such circumstance would be where the spoliated evidence relates to the matters in controversy in such a way that its spoliation threatens to interfere with the rightful decision of the case. *United States v. National Medical Enterprises, Inc.,* 792 F.2d 906, 912 (9th Cir.1986) (citing *North American Watch Corp. v. Princess Ermine Jewels,* 786 F.2d 1447, 1451 (9th Cir.1986).

The imposition of the more drastic sanctions of dismissal or default judgment require a

finding of "willfulness, fault, or bad faith." *Leon,* 464 F.3d at 958. "A finding of any of these circumstances can justify the sanction of dismissal [or entry of default]." *Halaco Engineering Co.,* 843 F.2d at 380. "Fault" is recognized as distinct from "willfulness" and "bad faith" and can serve as the basis for a dismissal or default judgment. *United Artists Corp. v. La Cage Aux Folles, Inc.,* 771 F.2d 1265, 1270 (9th Cir.1985), *abrogated on other grounds, In re Slimick v. Silva,* 928 F.2d 304, 310 (9th Cir.1990).

In making a determination whether to impose a dispositive sanction, the court should consider the following factors: (1) the existence of certain extraordinary circumstances; (2) the presence of willfulness, bad faith, or fault by the offending party; (3) the efficacy of lesser sanctions; (4) the relationship or nexus between the misconduct and the matters in controversy; and, as an optional consideration where appropriate, (5) the prejudice to the party victim of the misconduct. *Halaco Engineering Co.,* 843 F.2d at 380. These considerations are much the same as the considerations which guide the imposition of sanctions generally under Fed.R.Civ.P. 37.

A dispositive sanction is ordinarily justified in circumstances where the spoliation is the result of willfulness or bad faith. *See Leon,* 464 F.3d at 958. But even when the spoliation is less culpable, "dismissal may be necessary if the prejudice to the [nonspoiling party] is extraordinary, denying it the ability to adequately defend [or prosecute] its case." *Silvestri v. General Motors Corp.,* 271 F.3d 583, 593 (4th Cir.2001). The prejudice inquiry, of course, "looks to whether the [spoliating party's] actions impaired [the affected party's] ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon,* 464 F.3d at 959.

A number of cases, in addition to *Leon, Halaco,* and *Anheuser-Busch,* illustrate a variety of situations where a dispositive sanction was appropriate. *Jerry Beeman & Pharmacy v, Caremark, Inc,* 322 F.Supp.3d 1027 (C.D. Cal. 2018) (dismissal of complaint based on the willful destruction of business records); *Omnigen Research v. Yongqiang Wang,* 321 F.R.D. 367 (D. Oregon 2017) (terminating sanctions warranted because of the intentional spoliation of electronic evidence and failure to obey court orders); *Consumer Financial Protection Bureau v. Morgan Drexen, Inc.*, 101 F. Supp.3d 856 (C.D. Cal. 2015) (willful spoliation of evidence warranted the

sanction of default judgment).

### C. Severe Sanctions are Appropriate Where Video Evidence is the Best Evidence of an Event in Dispute

In *Peschel v. City of Missoula,* 664 F.Supp.2d 1137 (D. Mont. 2009) the plaintiff, Dr. Walter Peschel, was mowing the lawn of an apartment building he owned in Missoula. A tenant approached and asked for assistance with another tenant, Huguet, who had a gun and was threatening to commit suicide. Peschel asked the tenant to call 911 and then intervened to prevent the suicide. Officers responded and ordered Peschel to get away from Huguet's car and out of the line of fire. Peschel refused and stayed with Huguet until she lost consciousness. Peschel moved away from the car, the incident escalated, and Peschel was ultimately battered, tasered, and arrested.

The incident was recorded by a video camera located on one of the police cars and eventually uploaded to the hard drive of a Missoula Police Department computer and viewed by several officers in the days following the arrest. At some point the video was "lost." The court opined:

> "The principle dispute in this case is whether or not the on-the-scene officers used unreasonable force, under the existing circumstances, to arrest Peschel. The video recording which captured the entire sequence of events surrounding the arrest constituted *not only relevant evidence, but the best evidence* of the circumstances existing at the time of Peschel's arrest, as well as the type and amount of force used to effect his arrest". *Id.* at 1144 (emphasis added).

> "The importance of video recordings to the fair, accurate, and expeditious resolution of disputes emanating from encounters between law enforcement and the public cannot be overstated. The Court would be remiss to simply ignore, as suggested by the City, the spoliation of the video recording". *Id.* at 1145.

> "The City's spoliation of the video recording severely disrupted the orderly administration of justice in this case, and destroyed the evidentiary balance essential to the accuracy of the fact-finding process. *See Halaco,* 843 F.2d at 380; *Gates Rubber Co.,* 167 F.R.D. at 106. These conditions warrant a strict sanction." *Peschel*, *supra* at 1146.

In *Pettit v. Smith*, 45 F.Supp.3d 1099 (D. Arizona, 2014) a prisoner alleged his Eight Amendment rights had been violated by excessive force used during an escort to his cell. It was

- 9 -

PLAINTIFFS' MOTION FOR SANCTIONS

undisputed that the incident was recorded on video camera and that the video had gone missing. A terminating sanction was not appropriate because "the Court cannot conclude that Defendants acted in bad faith." *Id*. at 1114. Sanctions included an adverse-inference instruction.

Two more recent decisions deal with the spoliation of video evidence in custodial settings. *Mizzoni v Nevada,* 2017 WL 4284597 (D. Nevada 2017) (failure to preserve video evidence of use of force incident in prison warranted an adverse inference instruction) and *Doe v County of San Mateo,* 2017 WL 6731649 (N. D. Cal. 2017) (failure to preserve documents regarding rape of juvenile in custody warranted adverse inference instruction).

In *Phan v. Costco Wholesale Corp.,* 2020 WL 5074349 (N.D. Cal. 2020) the plaintiff alleged he slipped and fell at a Costco gasoline station sustaining injuries. A video surveillance camera recorded the event, and on the day of the incident a loss prevention agent copied the video footage of the fall and saved it to an external hard drive. During the deposition of the on-duty manager, the plaintiff learned that there had once been video footage of the fall and that the deponent had later watched the footage. The Defendant purportedly undertook efforts to locate the video footage but informed the plaintiff that the footage could not be located. The court noted that, "[t]estimony cannot replace a video that would have shown objectively, the circumstances that led to the plaintiff's fall, or perhaps allowed an expert in accident reconstruction to opine on the mechanics of the fall. Defendant does not point to any evidence that would replace entirely the value of the evidence in this case." *Id*. at 3. The court concluded that an adverse inference instruction was the appropriate sanction.

### D.     The Appropriate Sanction

The factors for this court to consider in determining the appropriate sanction are set forth in *Leon v. IDX Systems Corp.* 464 F.3d 951 (9th Cir. 2006) and *Halaco Engineering Co.v. Costle,* 843 F.2d 376 (9th Cir. 1988).

#### 1.     The Existence of Extraordinary Circumstances

The County's spoliation of the video recordings has severely disrupted the orderly administration of justice in this case and destroyed the evidentiary balance essential to the

- 10 -

accuracy of the fact-finding process. *Halaco,* supra, at 380.

### 2. Willfulness, Bad Faith or Fault

The County is at a minimum at fault for the spoliation of two video recordings that are the best evidence of Plaintiffs' claims. County counsel was on actual notice of Plaintiffs' request to produce the video only thirteen days after Nino's death. The County's own policies required collection and preservation of the videos. Even if the County had not received a Public Records Act Request from Plaintiffs' counsel for the videos, the very fact of an in-custody death should be sufficient to put the County on notice of the *reasonably foreseeable possibility* of litigation. The videos that *were* selectively preserved (at the expense of the most critical portions that were not) were collected by the very same on-duty watch commander who approved Nino's placement in the safety cell to begin with. Under such circumstances, and given the fact that the content of the videos was inarguably the most important evidence in this case, the Court may conclude that the spoliation was not inadvertent, but intentional and in bad faith.

### 3. Nexus Between Sanctions, Misconduct and Matters in Controversy

The County cannot dispute that spoliation of the videos relates to the principal matter in controversy – when was Nino discovered non-responsive in his cell, and how soon thereafter did the jail staff react to commence resuscitation efforts? The video evidence is the best evidence of what did and did not occur during the last moments of Nino's life. The spoliation of such critical evidence has directly interfered with – and possibly precluded – the rightful decision of this case.

### 4. Risk of Prejudice to the Plaintiffs

Plaintiffs have sustained their burden of establishing that they have been prejudiced by the spoliation of these videos. Nino Bosco cannot tell us what happened in the moments before his death, and all other witnesses to his death are hostile to Plaintiffs' interests. The only reliable evidence of the acts and omissions of those charged with Nino's safety has been destroyed by the very same people accused of the wrongdoing that led to Nino's death.

### 5. Public Policy Favoring Disposition of Cases on their Merits

The public has an important interest in the fair and accurate resolution of a dispute regarding the preventable death of a known suicidal person in custody. The best evidence of what occurred has been intentionally destroyed and has hindered the most accurate determination of this case upon the merits. Before imposing a dispositive sanction of dismissal or default the court must consider the feasibility of less drastic sanctions and provide an explanation why such lesser sanctions would be inappropriate. *Halaco,* supra, at 381; *Leon*, supra, at 960.

In this case the Court may conclude from the circumstances surrounding the destruction of the video evidence that its loss was willful. If there had been no video preserved at all, the loss might be attributed to negligence. But here video *was* preserved, but that video was only of the events before and after Nino was discovered in his cell. The video that was preserved was selected by the watch commander who approved Nino's safety cell placement. That watch commander selected the videos he did for a reason, and the Court may infer that his reasoning was less than innocent. Had a single surveillance camera's video been deleted, while the other was saved, the County might have a stronger case for arguing that they were merely negligent in the spoliation (and there would still have been evidence of what occurred during these events, so it is unlikely there would have been prejudice to the Plaintiffs.) But here, a jail lieutenant responsible for Nino's safety on the night he died collected some video, but specifically did *not* collect two different videos showing these events – the only two videos that would have captured the fourteen minutes surrounding Nino's death.

The Court may infer that had this been an act of mistake or inadvertence, the Internal Affairs investigation would have made note of the missing video and retrieved them prior to the spoliation. But such did not occur. The IA investigation paid no mind to the missing videos. This is especially troubling in light of the County's own policies regarding the collection and retention of evidence during jail suicides.

The Court should further consider that the County was on notice of the possibility of pending litigation and took no steps to preserve the evidence, and that it now suggests it had no

- 12 -

PLAINTIFFS' MOTION FOR SANCTIONS

duty to do so.

It is axiomatic that destruction of evidence central to a plaintiff's claim is prejudicial to that plaintiff. When there is no reliable alternative to that evidence, the self-serving testimony of jail staff will not suffice, and the prejudice becomes impossible to overcome. Plaintiffs believe that if the evidence had been preserved it would have shown a failure of jail staff to adequately monitor Nino, or a failure to monitor Nino at all. Plaintiffs further believe that video would have shown that upon discovery of Nino unresponsive in his cell, jail staff were apathetic to his condition, and that despite Nino being visibly in respiratory arrest, jail staff took more than ten minutes to open his cell. This theory is in keeping with the video evidence of jail staff observing Nino for only four seconds in the hour and a half prior to his being discovered unresponsive, as well as the resuscitation efforts following Nino's removal from his cell, during which time jail staff fail to begin CPR for two minutes and twelve seconds after a CFMG nurse announces that Nino had no pulse. The video of the resuscitation efforts further shows Nino's airway was never cleared, and that no respirations were delivered until nearly four minutes after it was announced Nino had no pulse. Once respirations were given, nursing staff used a bag valve mask ventilator to force air into Nino's lungs but did not remove the visible obstruction from Nino's airway first, effectively forcing the obstruction farther into Nino's airway. (See Schwaiger Dec.)

Here the County's actions are similar to a party who destroys the most important pages of a document while preserving those pages that came before and after. Absent a believable explanation from the County as to why this has occurred, the Court should find the fault and willfulness necessary to impose the dispositive sanction of default. If the Court finds the County's culpability does not call for default, Plaintiffs request an adverse inference against the County defendants, such that the factfinder will be instructed to presume the evidence contained in the spoliated video demonstrated the deliberate indifference of those responsible for Nino's care. Plaintiff's request whatever further relief the Court may deem proper.

## CONCLUSION

For the above reasons, the Court should impose sanctions against the County up to an including default judgment.

Dated: October 1, 2021                                   S<small>COTT</small> L<small>AW</small> F<small>IRM</small>


By: /s/ John Houston Scott
      John Houston Scott
      Attorney for Plaintiffs


Dated: October 1, 2021                                   S<small>CHWAIGER</small> L<small>AW</small> F<small>IRM</small>


By: /s/ Izaak D. Schwaiger
      Izaak D. Schwaiger
      Attorney for Plaintiffs